1  RALPH J. SWANSON, CA STATE BAR NO. 67751
   SHANNON N. COGAN, CA STATE BAR NO. 214976
2  BERLINER COHEN
   TEN ALMADEN BOULEVARD
3  ELEVENTH FLOOR
   SAN JOSE, CALIFORNIA 95113-2233
4  TELEPHONE: (408) 286-5800
   FACSIMILE: (408) 998-5388
5  ralph.swanson@berliner.com
   shannon.cogan@berliner.com
6

7  ATTORNEYS FOR DEFENDANTS BANDERA FALLS
   PROPERTY OWNER'S ASSOCIATION, JEAN M. KENNEDY,
   CLAUDE LINDLEY, LORETTA LINDLEY, PAUL AHRENS,
8  SERGIO ORTEGA, AND ROB JACOBSON

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12

13  BUNKER B.W. ROGGE,                  CASE NO.  C 07-02920 PVT

14              Plaintiff,              DEFENDANTS' MEMORANDUM OF
                                        POINTS AND AUTHORITIES IN SUPPORT
15       v.                            OF SPECIAL MOTION TO STRIKE
                                        CAUSES OF ACTION BROUGHT TO
16  BANDERA FALLS PROPERTY OWNER'S      CHILL THE VALID EXERCISE OF THE
    ASSOCIATION, CLAUDE LINDLEY, PAUL   CONSTITUTIONAL RIGHTS OF PETITION
17  AHRENS, LORETTA LINDLEY, ROB        AND FREEDOM OF SPEECH
    JACOBSON, DENNIS BAKER, JEAN
18  KENNEDY, KERRY HELGREN-             [California Code of Civil Procedure § 425.16]
    SCHNEIDER, SERGIO ORTEGA, and TOM
19  PARKER,                            Date:      August 28, 2007
                                        Time:      10:00
20              Defendants.             Dept.:     Courtroom 5
                                        Judge:     Hon. Patricia V. Trumbull
21
                                        Case Filed:  June 5, 2007
22  _____     Trial Date:  none set

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................. 2

II.   FACTS ................................................................................................................. 3

III.  ARGUMENT ....................................................................................................... 5

      A.    California's anti-SLAPP Suit Statute is Applicable in Federal Cases ................... 6

      B.    The First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth
            Causes of Action Arise from Defendants' Acts in Furtherance of Their
            Constitutional Rights of Petition and Freedom of Speech in Connection
            with a Public Issue ......................................................................................... 6

      C.    Plaintiff Cannot Establish a Probability that He Will Prevail on the First,
            Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, or Tenth Causes of
            Action ........................................................................................................... 11

IV.   CONCLUSION ................................................................................................... 13

\SCOGAN\731701.5
071707-16236001

## <u>TABLE OF AUTHORITIES</u>

Page

### Cases

*Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1006 (1999) ............................ 12

*Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491 (1995) .................................... 10, 11

*Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th 468  (2000) ........................................ 7

*Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53 (2002) ................................ 12

*Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees*, 69 Cal. App. 4th 1057 (1999) ................................................................................................................ 12

*Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676 (1994) ............................................. 13

*United States v. Lockheed Missiles and Space Company*, 190 F.3d 963 (9th Cir. 1999) ................................................................................................................................. 6

*Wilcox v. Superior Court*, 27 Cal. App. 4th 809 (1994) ............................................................. 12

*Zamos v. Stroud*, 32 Cal. 4th 958 (2004) ................................................................................ 6, 12

### Statutes

Cal. Code Civ. Proc. § 425.15(a) ............................................................................................... 11

Cal. Code Civ. Proc. § 425.16(a) ................................................................................................. 5

Cal. Code Civ. Proc. § 425.16(b)(1) ............................................................................................. 5

Cal. Code Civ. Proc. § 425.16(b)(2) ........................................................................................... 12

Cal. Code Civ. Proc. § 425.16(e) ................................................................................................. 6

\SCOGAN\731701.5
071707-16236001

1       Defendants Bandera Falls Property Owner's Association, Claude Lindley, Paul Ahrens,

2   Loretta Lindley, Rob Jacobson, Jean Kennedy, and Sergio Ortega (collectively, "Defendants")

3   respectfully request that the Court strike the First, Second, Third, Fourth, Fifth, Sixth, Eighth,

4   Ninth, and Tenth causes of action of the complaint filed by Plaintiff Bunker B.W. Rogge.

5   Defendants bring their motion to strike pursuant to California Code of Civil Procedure Section

6   425.16, which provides that a cause of action against a person arising from any act of that person

7   in furtherance of his or her right of petition or free speech under the United States or California

8   Constitution in connection with a public issue may be subject to a special motion to strike.[1]

9   I.     <u>INTRODUCTION</u>

10       Plaintiff's action, alleging that Defendants defamed him by virtue of the publication of a

11   newsletter, operates to chill Defendants' participation in matters of public concern in violation of

12   their constitutional rights of petition and free speech.  Plaintiff claims to own a substantial

13   amount of property in the Bandera Falls subdivision in Pipe Creek, Texas.[2]  Defendants are all

14   individual homeowners in Bandera Falls and members of the Bandera Falls Property Owners

15   Association ("BFPOA").  In May 2006, the BFPOA enacted regulations forbidding future

16   placement of manufactured homes in Bandera Falls.  Plaintiff responded to this rule change by

17   placing angry and harassing telephone calls to Defendants Claude Lindley and Rob Jacobson.  In

18   addition, Defendant Jean Kennedy investigated anomalies in Bandera Falls property appraisals

19   and exercised her right to petition the County of Bandera Falls' Chief Appraiser regarding those

20   anomalies, resulting in the restoration to the tax roll of some property belonging to Kenneth

21   Howarth (not a party hereto), as well as increased appraisal values (and attendant increased

22   property taxes) for a large number of Mr. Howarth's properties.

---

[1] By separate Notice of Motion and Motion Defendants are also moving, under Rule 12 (b)(6) of the Federal Rules of Civil Procedure, to dismiss the Seventh and Eighth Causes of Action on the grounds that each fails to state claims upon which relief may be granted.  See Defendants' Motion to Dismiss, filed concurrently on July 17, 2007.

[2] Plaintiff claims to own the Bandera Falls properties for which Kenneth Howarth is listed as owner of record.  Complaint, p. 3:6-10.

1  Plaintiff is plainly angered by the BFPOA's prohibition of manufactured housing, and it

2  is likely he will be financially impacted by the increased appraisal values of Mr. Howarth's

3  properties.  However, Plaintiff's action, alleging numerous causes of action based on either the

4  Newsletter's publication or Defendants' petition activity, operates to discourage Defendants

5  from further petition activity, and to chill their constitutional rights to freedom of speech.  The

6  publication of the Newsletter is entitled to protection under California's anti-SLAPP statute as an

7  act in furtherance of Defendants' free speech rights in connection with a public issue, and as

8  such, the court should strike the First through Sixth, Eighth, Ninth, and Tenth causes of action

9  from the Complaint.

10  II.    FACTS

11  Plaintiff was formerly the president of a company, Oakstar Development, which

12  purchased unsold properties in the Bandera Falls subdivision in Pipe Creek, Texas in 1997, and

13  then became bankrupt within approximately two years.  Declaration of Jean Kennedy ("Kennedy

14  Decl.") ¶ 17.  Following the bankruptcy of Oakstar Development, Kenneth Howarth acquired the

15  remaining unsold property in Bandera Falls, and at present is listed as owner of record for more

16  than 89 properties.  Kennedy Decl. ¶¶ 3, 17.  Plaintiff alleges that he is the true owner of the

17  properties for which Mr. Howarth is owner of record.  Complaint, p. 3:6-10.  Accordingly, if

18  true, Plaintiff owns a substantial amount of property in the Bandera Falls subdivision.

19  Defendants are all individual homeowners in Bandera Falls, and some are also officers or

20  directors of the BFPOA.  Declaration of Claude Lindley ("C. Lindley Decl.") ¶¶ 1-2, Declaration

21  of Loretta Lindley ("L. Lindley Decl.") ¶¶ 1-2, Declaration of Rob Jacobson ("Jacobson Decl.")

22  ¶¶ 1-2, Declaration of Paul Ahrens ("Ahrens Decl.") ¶¶ 1-2, Declaration of Sergio Ortega

23  ("Ortega Decl.") ¶ 1, Kennedy Decl. ¶¶ 1-2.  Defendant Jean Kennedy, troubled by an enormous

24  increase in the appraised value of her Bandera Falls property, engaged in extensive research of

25  public records, and uncovered inconsistencies in appraisals and, in some cases, the disappearance

26  altogether of certain of Mr. Howarth's property from the tax roll.  Kennedy Decl. ¶ 3.  As a result

27  of Mrs. Kennedy's research and her associated petition to the Chief Appraiser of the Bandera

28  County Appraisal District, the appraised value of her property has been reduced by

-3-

1   approximately $5000, while Mr. Howarth's properties have been reinstated to the tax roll and

2   many of his properties have experienced increases in appraisal values (and the attendant increase

3   in property taxes due). Kennedy Decl. ¶ 4.

4       Numerous Bandera Falls properties have been foreclosed upon in recent years, beginning

5   in approximately 1999. Kennedy Decl. ¶ 5, C. Lindley Decl. ¶ 3, L. Lindley Decl. ¶ 3. When

6   manufactured homes are foreclosed upon and repossessed, the BFPOA must expend its money

7   and the time of its members to restore the properties to a non-dangerous condition. C. Lindley

8   Decl. ¶ 5, L. Lindley Decl. ¶ 5. For example, in February 2007, the manufactured home across

9   the street from Defendants Claude and Loretta Lindley was repossessed and removed. Left

10  behind on the vacant lot was dangerous debris such as wires, sewer pipes, broken decking, jugs

11  of used car fluids, and a broken freezer. C. Lindley Decl. ¶ 4, L. Lindley Decl. ¶ 4, Kennedy

12  Decl. ¶ 7. The BFPOA spent $316 remediating the property. C. Lindley Decl. ¶ 4, L. Lindley

13  Decl. ¶ 4.

14      In May 2006, the BFPOA enacted regulations forbidding future placement of

15  manufactured homes in Bandera Falls. C. Lindley Decl. ¶ 6; L. Lindley Decl. ¶ 6, Jacobson

16  Decl. ¶ 3. Plaintiff reacted to the regulations by placing a telephone call to the home of

17  Defendant Claude Lindley, in which he informed Mr. Lindley that he would sue the BFPOA. C.

18  Lindley Decl. ¶ 7. His manner was loud and rowdy, and when he ignored Mr. Lindley's request

19  that he calm down, Mr. Lindley was forced to end the telephone call. *Id*. Later, Plaintiff placed

20  a telephone call to Defendant Rob Jacobson, stating that Mr. Jacobson cost Plaintiff a property

21  sale by denying a request to place a manufactured home in Bandera Falls. Jacobson Decl. ¶ 4.

22  Again, Plaintiff became increasingly agitated and verbally abusive. *Id*.

23      Motivated by her research and by the community's ongoing problems related to

24  foreclosures and property abandonment, Defendant Jean Kennedy began to write and publish a

25  newsletter entitled "Our Bandera Falls" (the "Newsletter"), to provide a tool for the Bandera

26  Falls community to share information and express ideas, interests and concerns that may benefit

27  or adversely affect the community. Kennedy Decl. ¶¶ 12-13. Mrs. Kennedy mailed the

28  Newsletter to all individual property owners of record in Bandera Falls. Kennedy Decl. ¶ 14.

CASE NO. C 07-02920 PVT

-4-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE

The March 1, 2007 issue of the Newsletter contained Mrs. Kennedy's editorial entitled "Who the H#%! [sic] is Bunker B. Rogge?". Kennedy Decl.¶ 16. The editorial contained Mrs. Kennedy's opinions regarding the maintenance, foreclosure, and abandonment problems in Bandera Falls, formed after her extensive research into property values and ownership histories, as well as her conversations with Bandera Falls residents. Kennedy Decl.¶¶ 8-10, 16. After the BFPOA enacted regulations prohibiting the future installation of manufactured housing, Kenneth Howarth wrote a letter posing related questions to the BFPOA. Kennedy Decl. ¶ 19. Mrs. Kennedy's editorial was, in part, a public response to Mr. Howarth's inquiry. *Id*.

Plaintiff filed his Complaint alleging ten causes of action on June 5, 2007. Docket No. 1.

III.    ARGUMENT

The California Code of Civil Procedure provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Code Civ. Proc. § 425.16(b)(1). Section 425.16 is commonly known as the anti-SLAPP suit statute, where SLAPP stands for "strategic lawsuit against public participation." In enacting the anti-SLAPP statute, the California legislature found that there had been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for redress of grievances, that it was in the public interest to encourage continued participation in matters of public significance, and that participation should not be chilled through abuse of the judicial process. Cal. Code Civ. Proc. § 425.16(a).

The anti-SLAPP statute contains a two-part test to determine whether an action is a SLAPP suit subject to a special motion to strike. Cal. Code Civ. Proc. § 425.16(b)(1). The first part tests whether the action is a SLAPP suit, and the second decides whether, if it is a SLAPP suit, it may nonetheless survive the motion to strike because the plaintiff has established a probability of prevailing on the complaint. Once the court determines that the action is a SLAPP suit, the plaintiff must provide the court with sufficient evidence to determine whether there is a

1  probability that the plaintiff will prevail on his claims.  *Zamos v. Stroud*, 32 Cal. 4th 958, 965

2  (2004).

3      A.     California's anti-SLAPP Suit Statute is Applicable in Federal Cases

4      The Ninth Circuit Court of Appeals has determined that California's anti-SLAPP statute

5  does not conflict with the Federal Rules of Civil Procedure and is applicable in federal cases.

6  *United States v. Lockheed Missiles and Space Company*, 190 F.3d 963, 973 (9th Cir. 1999).

7      B.     The First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, and Tenth Causes of
           Action Arise from Defendants' Acts in Furtherance of Their Constitutional Rights
8           of Petition and Freedom of Speech in Connection with a Public Issue

9      Nearly all of Plaintiff's causes of action arise from Defendants' acts in furtherance of

10  their constitutional rights of petition and freedom of speech in connection with a public issue.

11  Each of the First, Second, Third, Fourth, Fifth, Sixth, Ninth, and Tenth causes of action is based

12  on the Newsletter, which Plaintiff characterizes as "a mailer in which Bunker Rogge was

13  severely Libeled."[3]    Complaint, p. 3:20-21.  Plaintiff claims that the Newsletter defames his

14  business practices, personal integrity, and the personal integrity of the people with whom he

15  engages in business.  Complaint, p.3:21-23.  Plaintiff enumerates sixteen allegedly defamatory

16  statements, each appearing in the March 1, 2007 issue of the Newsletter.  Complaint, pp. 4:1-5:3.

17      Under the anti-SLAPP statute, a protected act in furtherance of a person's constitutional

18  right of petition or free speech in connection with a public issue includes "any written or oral

19  statement or writing made in a place open to the public or a public forum in connection with an

20  issue of public interest."  Cal. Code Civ. Proc. § 425.16(e).  The Newsletter qualifies as a writing

21  made in a public forum in connection with an issue of public interest, and is entitled to protection

22  under the anti-SLAPP statute.  *See Damon v. Ocean Hills Journalism Club*, 85 Cal. App. 4th

23  468, 476-79 (2000).

24

25  [3] The Eighth Cause of Action, "Constitutional Violation of the Fourteenth Amendment as to Due
    Process of Law," does not incorporate other allegations in the Complaint and does not
26  specifically reference the Newsletter.  It is extremely difficult to determine what, exactly, is the
    complained-of activity.  However, Defendants believe it is subject to the anti-SLAPP statute, as
27  Plaintiff alleges that Defendants "conspired" in delaying state and county licensing processes,
    thereby implicating Defendants' right to petition.  Separately, Defendants have moved for
28  dismissal of this cause of action pursuant to F.R.C.P. 12(b)(6).  *See* footnote 1 above.

\SCOGAN\731701.5
071707-16236001

1    In *Damon*, a case remarkably similar to the instant action, the former manager of a

2  homeowners association brought a defamation action against association members, directors, and

3  a private club that published a newsletter.   *Damon*, 85 Cal. App. 4th at 471.   Several

4  homeowners concerned about the plaintiff Damon's handling of association management

5  expressed their views criticizing his competency in articles, editorials, and letters to the editor in

6  the Village Voice newsletter, published by a private homeowners club and circulated to

7  association members and local businesses. *Id.* at 472.  As in this case, the Village Voice was not

8  an official publication of the homeowners association.  *Id.*  After leaving his position, Damon

9  filed a defamation complaint against the association members whose views were published in the

10  Village Voice, as well as the publisher of the Village Voice and association directors who made

11  allegedly defamatory comments about Damon at board meetings.  *Id.* at 473.

12    The California Court of Appeal held that the anti-SLAPP statute applied because the

13  contents of the newsletter were allegedly defamatory statements made in a public forum

14  concerning an issue of public interest.  *Id.* at 474.  The stated purpose of the newsletter was to

15  "communicate information of interest and/or concern to the residents," and the newsletter was

16  distributed to association residents and neighboring businesses.  *Id.* at 476.  Damon argued that

17  the newsletter could not be a public forum because it was essentially a mouthpiece for a small

18  group of homeowners who generally would not permit contrary viewpoints to be published.  *Id.*

19  The court found that even if the record supported that characterization, it would not take the

20  newsletter outside the protection of the anti-SLAPP statute.  *Id.*  Numerous courts have construed

21  the "public forum" requirement to include publications with a single viewpoint, and the *Damon*

22  court held that a single publication does not lose its "public forum" character merely because it

23  does not provide a balanced viewpoint.  *Id.* at 476-77.

24    The court also found that the topics of the allegedly defamatory statements concerned

25  issues of public interest, which is broadly construed to include not only governmental matters,

26  but also private conduct that affects a community in a manner similar to that of a governmental

27  entity.  *Id.* at 478-79.  Though the allegedly defamatory statements were made in connection with

28

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE

\SCOGAN\731701.5
071707-16236001

1    the management of a private homeowners association, they concerned issues of critical

2    importance to a large segment of the local population.  *Id.*

3        *Damon* should guide this court's analysis of the application of the anti-SLAPP statute.

4    As in that case, this is a defamation case (though Plaintiff's causes of action encompass libel and

5    interference with contract and prospective economic advantage, they are all based on allegedly

6    defamatory statements in the Newsletter).  Like the Village Voice, the Newsletter constitutes a

7    public forum for purposes of the anti-SLAPP statute.  The Newsletter was not an official

8    publication of the BFPOA, was written and published privately with the intent to facilitate

9    communication between all the Bandera Falls property owners regarding matters of common

10   interest, and was distributed to all individual property owners of record in Bandera Falls.  C.

11   Lindley Decl. ¶ 8, Kennedy Decl. ¶¶ 12-14.  In addition to the statements Plaintiff complains of,

12   the Newsletter has provided content to the Bandera Falls community regarding a possible

13   commercial use in the subdivision, news from the BFPOA, the status of Bandera Falls roads,

14   parks, and open lands, and information regarding covenants, conditions, and restrictions.

15   Kennedy Decl., Exhibits A and B.

16       Furthermore, the allegedly defamatory statements concerned issues of critical importance

17   to the Bandera Falls population, namely, the sudden prevalence of foreclosures upon, and

18   abandonment of, properties containing manufactured homes.  C. Lindley Decl. ¶ 3-6; L. Lindley

19   Decl. ¶ 3-6, Jacobson Decl. ¶ 3, Kennedy Decl. ¶¶ 5, 7-11, 17.  Following is each allegedly

20   defamatory statement enumerated by Plaintiff in his Complaint, and a citation to responsive

21   evidence demonstrating the factual basis therefore and import to public issues.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

CASE NO.  C 07-02920 PVT
                                        -8-
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE

| ALLEGED STATEMENT | RESPONSE |
|---|---|
| "Ken Howarth's agent, Bunker Rogge Continues efforts to harass and intimidate BFPOA officers." | Plaintiff himself alleges that he is Ken Howarth's agent, in that Howarth is the owner of record for property in Bandera Falls that Plaintiff claims to own through "unrecorded contract(s) for deed." Complaint, p. 3:6-10. |
| | Plaintiff made abusive and aggressive phone calls to BFPOA officers Claude Lindley and Ron Jacobson. C. Lindley Decl. ¶ 7, Jacobson Decl.¶ 4. |
| "Rogge has no standing in this community." | Plaintiff is not the owner of record of any property in Bandera Falls. Complaint, p. 3:6-10, Kennedy Decl. ¶ 15. |
| "Who the H#&! is Bunker Rogge?" | This is merely a question. Plaintiff is not the owner of record of any property in Bandera Falls. Complaint, p. 3:6-10, Kennedy Decl. ¶ 15. |
| "Is he a Bandera Falls property Owner? No!" | Plaintiff is not the owner of record of any property in Bandera Falls. Complaint, p. 3:6-10, Kennedy Decl. ¶ 15. |
| "Is he a Bandera County property Owner? No!" | Plaintiff is not the owner of record of any property in Bandera County. Kennedy Decl. ¶ 15. |
| "Oakstar the 'undevelopment company'" | Oakstar Development owned Bandera Falls property, filed for bankruptcy, and was foreclosed upon. Kennedy Decl. ¶ 17. |
| "We can credit the Rogge clan with inflated appraised land values, cluster septic systems and the infiltration of Bandera Falls by Predatory creatures of the manufactured housing industry and secondary mortgage market vultures." | Plaintiff is the former president of Oakstar Development, which acquired Bandera Falls in 1997 and is now bankrupt. Kennedy Decl. ¶ 17. This statement was made in the context of the fallout in Bandera Falls from the Oakstar bankruptcy. Kennedy Decl. ¶ 17. Further, Bandera Falls appraised land values were inflated, which was rectified by Jean Kennedy's research and redress to the Chief Appraiser. Kennedy Decl. ¶¶ 3-4. |

\SCOGAN\731701.5
071707-16236001

| ALLEGED STATEMENT | RESPONSE |
|---|---|
| "Rogge and friends induced financially unsophisticated, first time buyers to purchase land for three times it's the [sic] market value; bundled with overpriced manufactured homes." | Former owners of a foreclosed upon and repossessed manufactured home in Bandera Falls purchased land from Oakstar Development in 1999 for three times its market value. Kennedy Decl. ¶ 8. The former owner stated that he and his wife did not know any better. *Id.* Public records show that for properties with manufactured homes in Bandera Falls, oftentimes the installation date for the manufactured home is prior to the deed of trust date for the property, indicating that the home was bundled with the property for sale. Kennedy Decl. ¶ 11. |
| "We live with the remnants of the Rogge deals today, each time another property is abandoned or foreclosed in Bandera Falls, our BFPOA officers expend countless hours and our limited financial resources on this problem." | Bandera Falls has experienced numerous property foreclosures and abandonment. Kennedy Decl. ¶ 5, C. Lindley Decl. ¶ 3, L. Lindley Decl. ¶ 3. When property is foreclosed or abandoned, the BFPOA is required to expend time and/or money cleaning up the property. C. Lindley Decl. ¶ 5, L. Lindley Decl. ¶ 5. |
| "Rogge it seems currently represents Ken Howarth the current 'undeveloper' in some unofficial capacity." | Plaintiff himself alleges that he is Ken Howarth's agent, in that Howarth is the owner of record for property in Bandera Falls that Plaintiff claims to own through "unrecorded contract(s) for deed." Complaint, p. 3:6-10. |
| "Like the foreclosures, the predators and vultures are still here." | This is a statement of opinion on a public issue and does not imply a provably false assertion of fact. *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995). |
| "Unfortunately predatory developers, retailers, mortgage brokers, mortgage services and finance companies are lined up for the next great deal." | This is a statement of opinion on a public issue and does not imply a provably false assertion of fact. *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995). |
| "Should respected local realtors deal with property predators and finance vultures? 'H#%! No!'" | This is a statement of opinion on a public issue and does not imply a provably false assertion of fact. *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995). |
| "It is my opinion Mr. Howarth that only trashy people orchestrate real estate deals destined for foreclosure." | This statement of opinion is a response to Kenneth Howarth's written question of May 19, 2006, "Is it your opinion that trashy people only live in manufactured homes??" Kennedy Decl. ¶ 19. |

| ALLEGED STATEMENT | RESPONSE |
|---|---|
| "Undevelopers create slums" | This is a statement of opinion on a public issue and does not imply a provably false assertion of fact. *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995). |
| "Blame yourself and Rogge for your sales performance" | When property is foreclosed or abandoned, the BFPOA is required to expend time and/or money cleaning up the property. C. Lindley Decl. ¶ 5, L. Lindley Decl. ¶ 5. This statement was in response to Kenneth Howarth's written question of May 19, 2006, "Is it possible that the association's money would be much better spent fighting the disrespectful neighbors?" Kennedy Decl. ¶ 19. In context, the full statement was, "True developers maintain the parks, common areas and lots available for sale in subdivisions. They do this to protect their investments. Blame yourself and Rogge for your sales performance." Kennedy Decl, Exhibit A. |

As set forth above, each allegedly defamatory statement was made in the Newsletter, in the context of public comment and input on an issue of critical importance to the Bandera Falls community, and each is subject to the protection of California's anti-SLAPP statute, which is to be construed broadly, to encourage continued participation in matters of public significance. Cal. Code Civ. Proc. § 425.15(a); *see Briggs v. Eden Council for Hope and Opportunity*, 19 Cal. 4th 1006, 1119 (1999) (1997 amendment to Section 425.16 mandates broad construction of that section).

C.    Plaintiff Cannot Establish a Probability that He Will Prevail on the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, or Tenth Causes of Action

Because Defendants have shown that Plaintiff's claims arose from acts in furtherance of their rights of petition or free speech in connection with a public issue, the burden shifts to Plaintiff to establish a probability that he will prevail on his First through Sixth, Eighth, Ninth, and Tenth Causes of Action. *Equilon Enterprises, LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 63 (2002). Plaintiff must make a *prima facie* showing of facts that would, if proved at trial, support a judgment in his favor. *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 824 (1994). The court's determination of the motion cannot involve a weighing of the evidence (*Zamos v.*

1   *Stroud*, 32 Cal. 4th 958, 965 (2004)), but rather must consider the pleadings and supporting and

2   opposing affidavits stating the facts on which liability or defenses are based.  Cal. Code Civ.

3   Proc. § 425.16(b)(2); *see Monterey Plaza Hotel v. Hotel Employees & Restaurant Employees*, 69

4   Cal. App. 4th 1057, 1063-64 (1999).  Plaintiff must base his *prima facie* showing on admissible

5   evidence.  *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 830 (1994).

6        As an initial matter, six of the seven[4] Defendants had no part in the writing or publication

7   of the Newsletter which forms the basis for Plaintiff's complaints.  C. Lindley Decl. ¶ 8, L.

8   Lindley Decl. ¶ 7, Ahrens Decl. ¶ 3, Jacobson Decl. ¶ 5, Ortega Decl. ¶ 2.  Those six defendants

9   had no knowledge of the Newsletter until they received their copies in the mail.  *Id*.  Jean

10  Kennedy independently writes and publishes the newsletter, which is not affiliated with the

11  BFPOA.   Kennedy Decl. ¶ 12, Lindley Decl. ¶ 8.   Accordingly, there is no possibility that

12  Plaintiff can establish a probability of success against the BFPOA, Claude Lindley, Loretta

13  Lindley, Paul Ahrens, Ron Jacobson, or Sergio Ortega with respect to the First through Sixth,

14  Ninth, and Tenth Causes of Action, all of which are based on Plaintiff's complaints about the

15  content of the Newsletter.

16        Plaintiff cannot make the requisite showing with respect to Jean Kennedy, either.

17  Whether published material is reasonably susceptible of an interpretation which implies a

18  provably false assertion of fact – the dispositive question in a defamation action – is a question

19  of law for the court.  *Couch v. San Juan Unified Sch. Dist.*, 33 Cal. App. 4th 1491, 1500 (1995),

20  *citing Morningstar, Inc. v. Superior Court*, 23 Cal. App. 4th 676, 686-687 (1994).  None of the

21  statements enumerated by Plaintiff in his complaint are reasonably susceptible of an

22  interpretation which implies a provably false assertion of fact, as demonstrated in the chart at

23  Section III.B., above.

24        Further, Plaintiff cannot offer admissible evidence to support a judgment that any of the

25  statements in the Newsletter defamed him.   The strongest statements of opinion Plaintiff

26

27  [4] Defendant Claude Lindley is the President of the BFPOA, which is a Defendant, and avers that
    the BFPOA was never asked to sanction, approve, or participate in the writing or publication of
28  the Newsletter.  C. Lindley Decl. ¶ 8.

\SCOGAN\731701.5
071707-16236001

1  complains of are related to "predatory creatures of the manufactured housing industry and

2  secondary mortgage markets," and "predatory developers, retailers, mortgage brokers, mortgage

3  servicers, and finance companies," none of which Plaintiff alleges himself to be.  Plaintiff has

4  alleged simply that he owns Bandera Falls property by virtue of an unrecorded contract.

5  Complaint, p. 3:6-10.

6         The editorial statements in the Newsletter were opinions and questions designed to

7  stimulate conversation about a matter of importance to the Bandera Falls community, and are

8  clearly not defamatory of Plaintiff.  Plaintiff cannot establish a probability of success against

9  Jean Kennedy with respect to the First through Sixth, Ninth, and Tenth Causes of Action.

10        With regard to the Eighth Cause of Action, entitled "Constitutional Violation of the

11  Fourteenth Amendment as to Due Process of Law," Plaintiff cannot demonstrate a probability of

12  success as to any of Defendants.  As an initial matter, Defendants are all individual citizens, and

13  Plaintiff has not alleged that any of them are state actors or should be treated as such.

14  Accordingly, Defendants cannot be charged with constitutional violations.  In addition, though

15  this cause of action contains a conclusory allegation that Defendants have engaged in "economic

16  housing discrimination," Plaintiff has not properly pled a cause of action for same, and certainly

17  has not demonstrated any standing on his part to pursue such a claim.  Complaint, pp. 17:20-

18  18:1.

19  IV.    <u>CONCLUSION</u>

20        The publication of the Newsletter is entitled to protection under California's anti-SLAPP

21  statute as an act in furtherance of Defendants' free speech rights in connection with a public

22  issue.  The court should strike the First through Sixth, Eighth, Ninth, and Tenth causes of action

23  from the Complaint because Plaintiff's claims operate to chill Defendants' participation in

24  ///

25  ///

26  ///

27  ///

28  ///

CASE NO.  C 07-02920 PVT

-13-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE

1  matters of public concern in violation of their constitutional rights of petition and free speech,

2  and are unmeritorious.

3

4  DATED:  JULY 17, 2007                    BERLINER COHEN

5

6                                          BY:  __/s/_____
                                                RALPH J. SWANSON
7                                                SHANNON N. COGAN
                                                ATTORNEYS FOR DEFENDANTS BANDERA FALLS
8                                                PROPERTY OWNER'S ASSOCIATION, JEAN M.
                                                KENNEDY, CLAUDE LINDLEY, LORETTA
9                                                LINDLEY, PAUL AHRENS, SERGIO ORTEGA, AND
                                                ROB JACOBSON
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CASE NO.  C 07-02920 PVT                            -14-

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SPECIAL MOTION TO STRIKE